UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re

AVRAHAM SOFER,
                      Debtor.
-------------------------------------------------------------X
In re

1040 MANAGEMENT, LLC,
                      Debtor.
-------------------------------------------------------------X
RICHARD J. MCCORD, Esq., Chapter 7
Trustee for the Estate of Avraham Sofer,
                      Plaintiff,
-against-

AVRAHAM SOFER, and his agents,
representatives, and those acting in concert
with him,
                      Defendants.
-------------------------------------------------------------X
LORI LAPIN JONES, as Chapter 7 Trustee of
the Estate of 1040 Management LLC,
                      Plaintiff,

-against-

AVRAHAM SOFER, and his agents,
representatives, and those acting in concert
with him,
                      Defendants.
-------------------------------------------------------------X

Chapter 7

Case No. 13-46127-CEC

Chapter 7

Case No. 13-45283-CEC

Adv. Pro. No. 13-1498-CEC

Adv. Pro. No. 13-1497-CEC

## DECISION

APPEARANCES:

Abraham Neuhaus, Esq.
Neuhaus & Yacoob LLC
1222 Avenue M, Suite 207
Brooklyn, NY 11230
Attorneys for Adar 980 Realty LLC

Jon A. Lefkowitz, Esq.
1222 Avenue M
Suite 204
Brooklyn, NY 11230
Attorney for Debtors

Richard J. McCord, Esq.
Certilman Balin Adler & Hyman
90 Merrick Avenue
East Meadow, NY 11554
Attorneys for Richard J. McCord, chapter 7 trustee
of the estate of Avraham Sofer

Jordan Pilevsky, Esq.
LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, NY 11793
Attorneys for Lori Lapin Jones, Chapter 7 trustee
of the estate of 1040 Management, LLC

CARLA E. CRAIG
Chief United States Bankruptcy Judge

In these adversary proceedings, the chapter 7 trustees of the bankruptcy estates of Avraham Sofer ("Sofer"), and his business, 1040 Management, LLC ("1040 Management," and together with Sofer, the "Debtors"), obtained a preliminary injunction (the "Injunction") restraining Sofer, his agents, and employees, for a period of 45 days from (i) entering onto the parking lot located at 980 East 13th Street, Brooklyn, New York (the "Parking Facility") operated by the Debtors on premises leased from Adar 980 Realty LLC (the "Landlord"); (ii) communicating with any of the customers of the Parking Facility about collecting money or parking on the lot; and (iii) collecting any money due and owing to the Debtors on account of the prepetition or post-petition operation of the Parking Facility. The Injunction also directed the turnover of all money and proceeds derived from the operation of the Parking Facility to the Trustees.

The Landlord filed a motion pursuant to §§ 105 and 362(k)[1] to hold Sofer in civil contempt for operating the Parking Facility in violation of the automatic stay and the Injunction (the "Contempt Motion"), and sought the reimbursement of damages incurred as a result of Sofer's alleged violations, consisting solely of the attorney's fees and costs incurred by the Landlord in filing and prosecuting the Contempt Motion.

Although there is no doubt that Sofer violated the § 362(a)(3) and the Injunction, the Contempt Motion must be denied because the Landlord lacks standing to prosecute these claims.

### Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), 28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This decision constitutes the Court's

---

[1] Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11, U.S.C., and references to the "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

On August 28, 2013, 1040 Management filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, and Lori Lapin Jones (the "Business Trustee") was appointed as chapter 7 trustee of the bankruptcy estate of 1040 Management. The schedules listed priority debt of $1,500 for sales tax, and unsecured debt of $101,300. The Landlord is scheduled as the largest unsecured creditor, holding a debt of $55,000, and Agneta Sofer, Sofer's wife, is scheduled as holding a debt of $46,000 for monies loaned.

On August 29, 2013, the Landlord filed an emergency motion for relief from the stay to permit it to continue an eviction action with respect to the Parking Facility (the "1040 Lift Stay Motion"), which was returnable on October 9, 2013. Sofer and 1040 Management are co-tenants on the lease of the Parking Facility.

1040 Management opposed the Landlord's Lift Stay Motion, but the Business Trustee did not. On October 9, 2013, after applying the factors set forth in In re Sonnax Industries, 907 F.2d 1280 (2d Cir. 1990), the Court overruled 1040 Management's opposition, and issued an order granting the 1040 Lift Stay Motion.

The next day, on October 10, 2013, Sofer filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, and Richard J. McCord (the "Individual Trustee," and together with the Business Trustee, the "Trustees") was appointed as chapter 7 trustee of Sofer's bankruptcy estate. Sofer's schedules list secured debts of $8,390 relating to leased vehicles, and unsecured debt of $201,663, of which $150,000 is owed to the Landlord.

That same day, the Landlord filed an emergency motion for relief from the stay to permit it to continue the eviction action with respect to the Parking Facility (the "Sofer Lift Stay Motion"). The Sofer Lift Stay Motion was returnable November 5, 2013, and on November 8, 2013, the Court issued an order granting that motion to the extent it sought to prosecute the eviction action against Sofer, but stayed the enforcement of any judgment of possession or money judgment obtained in that action pending further order of this Court.

On October 18, 2013, the Trustees filed a joint motion pursuant to § 721 seeking authorization to operate the Parking Facility, which would be operated by the Landlord as their agent. The Debtors objected, arguing that the 1040 Lift Stay Motion was granted on the basis that the Business Trustee represented that she was not going to administer that asset. The Court overruled the objections, and by order dated October 24, 2013, authorized the Trustees, and the Landlord as the Trustees' agent, to operate the Parking Facility *nunc pro tunc* to October 10, 2013. The Debtors did not appeal that order.

On October 25, 2013, the Trustees commenced adversary proceedings against Sofer alleging that he continued to operate the Parking Facility filing post-petition, and collected the income and revenue generated by the Parking Facility. (Compl. ¶¶ 27-31, Adv. Pro. No. 13-1497-CEC, ECF No. 1; Compl. ¶¶ 28, 29, 31, 34, 35, 38, Adv. Pro. No. 13-1498-CEC, ECF No. 1.) The Trustees further alleged that Sofer did not turn over the income generated to the Trustees, and instead converted it for personal use, and also denied them access to the Parking Facility. (Compl. ¶¶ 32, 33, 36, 38, 43-46, 50, Adv. Pro. No. 13-1497-CEC, ECF No. 1; Compl. ¶¶ 30, 32, 33, 36-38, 43-46, 50, Adv. Pro. No. 13-1498-CEC, ECF No. 1.) The Trustees also alleged that Sofer directed the customers of the Parking Facility to make all payments to him,

and not to the Trustees. (Compl. ¶¶ 39-42, 51-52, Adv. Pro. No. 13-1497-CEC, ECF No. 1; Compl. ¶¶ 39-42, 51-52, Adv. Pro. No. 13-1498-CEC, ECF No. 1.)

Based upon these allegations, the Trustees sought relief pursuant to Bankruptcy Rule 7065, enjoining Sofer from "(a) using, dissipating, transferring or otherwise disposing of property of the Debtor's estate; (b) gaining access to the Parking Facility or coming within a two hundred (200) foot radius of the Parking Facility; and (c) communicating with the [customers of the Parking Facility]." (Compl. ¶ 83, Adv. Pro. No. 13-1497-CEC, ECF No. 1; Compl. ¶ 83, Adv. Pro. No. 13-1498-CEC, ECF No. 1.) The Trustees also sought turnover of all the post-petition income collected from the Parking Facility, in addition to various books and records. (Compl. ¶ 90, Adv. Pro. No. 13-1497-CEC, ECF No. 1; Compl. ¶ 88, Adv. Pro. No. 13-1498-CEC, ECF No. 1.) Lastly, the Trustees sought an accounting of all post-petition transfers of money and property. (Compl. ¶ 92, Adv. Pro. No. 13-1497-CEC, ECF No. 1; Compl. ¶ 90, Adv. Pro. No. 13-1498-CEC, ECF No. 1.) An emergency hearing on the Trustees' request for relief was held on October 30, 2013.

On November 1, 2013, the Court issued the Injunction restraining Sofer, and his agents and employees, for a period of 45 days from (i) entering onto the Parking Facility; (ii) communicating with any of the customers of the Parking Facility about collecting money or parking on the lot; and (iii) collecting any money due and owing to Sofer or 1040 Management on account of the prepetition or post-petition operating of the Parking Facility. (Order, Adv. Pro. No. 13-1497-CEC, ECF No. 9; Order, Adv. Pro. No. 13-1498-CEC, ECF No. 10.) The Injunction also directed Sofer, and his agents or employees, to turn over all money and proceeds derived from the operation of the Parking Facility to the Trustees. (Order, Adv. Pro. No. 13-1497-CEC, ECF No. 9; Order, Adv. Pro. No. 13-1498-CEC, ECF No. 10.) The Injunction

Case 1-13-01498-cec    Doc 27    Filed 03/13/14    Entered 03/14/14 09:48:30

provided that Parking Facility be closed effective October 31, 2013.  (Order, Adv. Pro. No. 13-1497-CEC, ECF No. 9; Order, Adv. Pro. No. 13-1498-CEC, ECF No. 10.)

On November 12, 2013, the Individual Trustee filed a notice of his intention to abandon Sofer's personal property located at the Parking Facility, as well as the lease to the Parking Facility.  The effective date of the abandonment was December 6, 2013, unless objections were filed.  No objections were filed, and those assets were deemed abandoned on December 6, 2013.

On November 20, 2013, the Business Trustee filed a notice of her intention to abandon the lease to the Parking Facility.  The effective date of the abandonment was also December 6, 2013, unless objections were filed.  No objections were filed, and that asset was deemed abandoned on December 6, 2013.

On November 15, 2013, the Landlord, acting on its own behalf and not in its capacity as the Trustees' agent, filed the instant Contempt Motion, alleging that Sofer required the Parking Facility's corporate customers to "pre-pay . . . as much as $600."  (Chaimovitz Decl. in Supp. ¶ 12, Case No. 13-46127-CEC, ECF No. 43-2; Chaimovitz Decl. in Supp. ¶ 12, Case No. 13-45283-CEC, ECF No. 30-2; Chaimovitz Decl. in Supp. ¶ 12, Adv. Pro. No. 13-1497-CEC, ECF No. 12-2; Chaimovitz Decl. in Supp. ¶ 12, Adv. Pro. No. 13-1498-CEC, ECF No. 13-2.)  The Landlord also alleged that Sofer obstructed the Landlord's attempt to operate the business as the Trustees' agent, and instead operated the Parking Facility himself or through agents, and contacted the Parking Facility's customers.  All of these alleged actions took place post-petition, and before the effective date of the Individual Trustees' abandonment of the lease to the Parking Facility.

Sofer objected to the Contempt Motion, arguing that he thought he was authorized to enter and operate the Parking Facility because the Trustees did not intend to administer the lease

to the Parking Facility, and because the automatic stay was lifted to allow the Landlord to prosecute the pending eviction action in state court. In other words, Sofer claims that he thought the orders lifting the stay terminated the Injunction. Sofer asserts that, as "a result of [that] misunderstanding, . . . [he] tried to open the lot on Nov[ember] 10, 2013 . . . [a]nd that is why [he] told certain vendors . . . that [he was] allowed to operate the business." (Sofer Decl. in Opp'n ¶ 5, Case No. 13-46127-CEC, ECF No. 48.)

The Trustees have taken no position with respect to the Contempt Motion.

## Discussion

Sofer argues that only the Trustees, and not the Landlord, have standing to seek to hold him in contempt for any violation of the Preliminary Injunction or the automatic stay. The Landlord argues that it has standing to bring this motion because it is a creditor of the estates.

"Standing is a threshold issue in every federal litigation." Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.), 417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009), aff'd, No. 09 CIV 09674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010), aff'd, 640 F.3d 53 (2d Cir. 2011). "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975). "To establish Article III standing, a party must show (1) an injury in fact that is actual or imminent rather than conjectural or hypothetical, (2) the injury is 'fairly traceable' to the conduct complained of, and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." Teligent, 417 B.R. at 210 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "Prudential standing refers to the requirement that even '[w]hen the [movant] has alleged injury sufficient to meet the case or controversy requirement, ...

the [movant] generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Id. (quoting Warth, 422 U.S. at 499) (alteration and omission in original).

The Landlord has Article III standing to prosecute the Contempt Motion because it incurred legal fees and expenses as a result of Sofer's alleged violations. See Ampal-Am. Isr. Corp., 502 B.R. 361, 369 (Bankr. S.D.N.Y. 2013) (former offices and directors of debtor had Article III standing to seek a holding of contempt and award of damages because they incurred legal fees as a result of the alleged violation of the automatic stay).

However, prudential standing "is a tougher question." Id. Creditors may have standing to seek to hold a party in contempt for violating the automatic stay because, while "the automatic stay is plainly intended to protect the debtor and property of the estate," it also serves to protect creditors and property of the estate. Id. See also In re MD Promenade, Inc., No. 08-34113-SGJ-7, 2009 WL 80203, at *10 (Bankr. N.D. Tex. Jan. 8, 2009) ("[T]he automatic stay exists to protect debtors and creditors alike from prejudicial or harmful actions taken against property of the estate."). However, in order to have standing to seek contempt for violation of the stay, "the creditor must assert a claim for his own direct injury and not a claim that belongs to the estate. . . . If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim." Ampal-Am. Isr., 502 B.R. at 371 (citations omitted) (internal quotation marks omitted). This requirement, that the creditor demonstrate a direct, particularized injury flowing from the stay violations, is typically satisfied where the violation of the automatic stay impairs a secured creditor's interest. Id. See Barnett Bank of Se Ga., N.A. v. Trust Co. Bank of Se. Ga., N.A. (In re Ring), 178 B.R. 570, 577 (Bankr. S.D. Ga. 1995) (holder of second security interest in chapter

7 debtor's property had prudential standing to seek damages for the debtor's violation of the automatic stay pursuant to § 105 because, among other things, it suffered the particularized injury of losing its security interest).

A debtor may be liable for violating the automatic stay. See 11 U.S.C. § 362(a) (The filing of the bankruptcy petition "operates as a stay, applicable to *all entities* . . . ." (emphasis added)); In re Sayeh, 445 B.R. 19, 26 (Bankr. D. Mass. 2011) (debtor violated § 362(a)(3) by removing property of the estate); MD Promenade, 2009 WL 80203, at *10 (debtor's principals violated § 362(a)(3) by removing property of the estate); Rosen v. Andresen (In re Andresen), Bankr. No. 01-25370-TJC, Adv. No. 06-01753, 2006 WL 4481984, at *9 (Bankr. D. Md. Nov. 1, 2006) (debtor violated § 362(a)(3) by suing chapter 7 trustee in an effort to control the disposition of estate property); In re Mannie, 299 B.R. 603, 607 (Bankr. N.D. Cal. 2003) (chapter 7 debtor violated § 362(a)(3) by filing and prosecuting pre-petition action); In re Davis, No. 98-30087, 2002 WL 33939739, at *8 (Bankr. D. Idaho Feb. 14, 2002) (Section 362(a)(3) "operates to prohibit any party's act to obtain possession or exercise or control over property of the estate. Debtor can count himself among those so stayed." (citation omitted)).

In this case, however, the Landlord has not suffered a particularized injury as a result of Sofer's violations of the Injunction or § 362(a)(3).[2] The Landlord does not allege that Sofer damaged the Parking Facility, or other property owned by the Landlord, when he operated the business. Nor does the Landlord allege that Sofer's violations prejudiced the prosecution of the state court eviction action against the Debtors, or any other particularized injury. Rather, any damages incurred as a result of Sofer's impermissible operation of the Parking Facility, as

---

[2] The purpose of the Injunction was to implement § 362(a)(3) by restraining Sofer from interfering with the Trustees' operation of the Parking Facility, and not to protect the Landlord's ownership interest in the premises. The Landlord's standing to seek a finding contempt and an award of damages for violating the Injunction is therefore inextricably intertwined with its standing to seek contempt and damages for violations of the automatic stay.

alleged by the Landlord, constitute "a generalized injury to the estate and an indirect injury to all creditors by possibly reducing the pool of assets available for distribution." Ampal-Am. Isr., 502 B.R. at 372. In other words, "every creditor could assert the same claim" that the Landlord is pursuing by the Contempt Motion. Id. As such, only the Trustees, and not the Landlord, may seek to hold Sofer in contempt for violating § 362(a)(3) and the Injunction. See St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir. 1989) ("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."); Ampal-Am. Isr., 502 B.R. at 372-73. See also Tilley v. Vucurevich (In re Pecan Groves of Az.), 951 F.2d 242, 245 (9th Cir. 1991) ("[A] creditor has no independent standing to appeal an adverse decision [received by a chapter 7 trustee] regarding a violation of the automatic stay.").

In support of its argument that it has standing, the Landlord relies on Bankruptcy Rule 9020, which provides that "[Bankruptcy] Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest." Fed. R. Bankr. P. 9020. However, that rule "merely establishes procedural guidelines covering motions for an order of contempt." In re World Parts, LLC, 291 B.R. 248, 253 (Bankr. W.D.N.Y. 2003). It also "codif[ies] the inherent contempt power of bankruptcy courts." Sears, Roebuck & Co. v. Spivey, 265 B.R. 357, 368 (E.D.N.Y. 2001). Bankruptcy Rule 9020 does not confer standing on creditors to seek contempt for any and all violations of court orders or the automatic stay.

The Landlord's reliance on In re World Parts, LLC, 291 B.R. 248 (Bankr. W.D.N.Y. 2003), is similarly misplaced. In World Parts, two creditors sought, in part, to hold a chapter 11 debtor's officers and attorney in contempt for failing to segregate assets in compliance with a

cash collateral order. World Parts, 291 B.R. at 250-51. The court found that the officers violated the cash collateral order, and awarded the movants consequential damages in the form of reasonable legal fees. Id. at 254-55, 257. Although World Parts did not address whether the moving creditors had standing, it appears that they did have standing under facts of that case and the principles of prudential standing articulated above. The segregation provision of the cash collateral order was granted "to preserve [the movants] claims of ownership in the disputed assets." Id. at 251. Therefore, the violation of that provision resulted in a particularized injury to the movants, which gave rise to their prudential standing to seek a finding of contempt and an award of damages.

The decisions that have held that creditors had standing to prosecute contempt motions for violations against the debtor typically involve chapter 11 debtors in possession, where there is no trustee to assert claims on behalf of the estate. See MD Promenade, 2009 WL 80203; In re Int'l Forex of Cal., Inc., 247 B.R. 284 (Bankr. S.D. Ca. 2000). For example, in MD Promenade, the bankruptcy court held that the chapter 11 debtor's landlord had standing to seek to hold the debtor's principals in contempt for violating the automatic stay by removing property of the estate from the leased premises. MD Promenade, 2009 WL 80203, at *10-11. The court reasoned that, leaving the decision of whether to pursue stay violations in the hands of the perpetrators of the violations "would leave the creditor body without a representative to seek redress of the wrong." Id. at *11. Moreover, it appears that the landlord in that case suffered a particularized injury because the removal of assets "was executed in a highly destructible manner" which left the leased space "trashed." Id. at *1. Because the estate was damaged as a result of the violations, the court awarded the damages incurred for the automatic stay violation

to be paid to the chapter 7 trustee, who had been appointed upon conversion of the case subsequent to the stay violations. Id. at *13.

Similarly, in International Forex, the bankruptcy court held that creditors had standing to seek damages for a violation of the automatic stay committed by the chapter 11 debtor's principal. Int'l Forex, 247 B.R. at 291. In that case, in order to stay the creditors' state court action against him, the debtor's principal filed a cross-complaint against the debtor seeking indemnification. Id. at 286-87. In determining that the creditors had standing to prosecute the claim for violation of the automatic stay, the court noted that, "in this case, it is this chapter 11 debtor's principal who willfully violated the stay (and thus would not likely cause the estate to commence this motion against himself)." Id. at 291. It should also be noted that, although the court in International Forex held that the movants' "personal injury" of being unable to proceed in state court against the debtor's principal satisfies Article III standing requirements, id. at 290, it appears that the injury also satisfies the "particularized injury" requirement for prudential standing.

The Landlord has not sought derivative standing to prosecute these claims for violating the automatic stay and the Injunction, and there is no allegation that the Trustees have unjustifiably refused to pursue, or consented to the Landlord's prosecution of, those claims. See Glinka v. Murad (In re Housecraft Indus. USA, Inc.), 310 F.3d 64, 70-72 (2d Cir. 2002) (A creditor may be granted derivative standing if (1) the trustee or debtor-in-possession unjustifiably refuses to assert claims, or consents to the creditor's prosecution of the claims; (2) prosecution of the claims is in the estate's best interest; and (3) prosecution of the claims is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. (citation omitted)). In these chapter 7 cases, the Trustees, as fiduciaries of the estates, have standing to seek

sanctions against Sofer for violation of the automatic stay and the Injunction if they consider it in the best interests of the estates to do so. The Individual Trustee has commenced an action seeking to deny Sofer a discharge under § 727 based, in part, upon Sofer's post-petition interference with the operation of the Parking Facility (including the actions that form the basis of this Contempt Motion) and his failure to turn over property of the estate. (Compl. ¶¶ 50, 51, 54, 56, 58-105, Adv. Pro. No. 14-1004-CEC, ECF No. 1.)

For these reasons, the Landlord lacks standing under § 105 to prosecute the Contempt Motion against Sofer. Nor does the Landlord have standing under § 362(k) to seek actual or punitive damages for Sofer's violations of the automatic stay.

Section 362(k) provides that, subject to an exception not relevant here, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). Because the Landlord is not an individual, it may not seek relief under § 362(k), and any relief for damages incurred from a violation of the automatic stay lies with the court's contempt power and § 105. See Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.), 920 F.2d 183, 186-87 (2d Cir. 1990). As discussed above, the Landlord lack standing to pursue those claims under § 105.

To the extent the Landlord's member, Sara Aliza Chaimowitz, also seeks damages under § 362(k), that motion must also be denied. Although Ms. Chaimowitz is an individual, she lacks standing under § 362(k) because she is not a creditor of the Debtors' estates. Ampal-Am. Isr., 502 B.R. at 371 (A party seeking relief under § 362(k) "must allege an injury in his capacity as a creditor of the estate rather than in some other capacity." (citing cases)); Int'l Forex, 247 B.R. at 291 ("[O]ther courts have also held that third party strangers to an estate do not have standing

under § 362(k)." (citing cases)).  To the extent she was personally injured by Sofer's post-petition conduct, she may pursue those claims in another forum.

## Conclusion

For these reasons, the Contempt Motion is denied for lack standing.  A separate order will issue.



**Dated: Brooklyn, New York**
**March 13, 2014**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**